**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TROY HENDERSON,                 ) | |
|                          ) | |
|         Plaintiff,         ) | |
|                          ) | Case No. 13 CV 2621 |
|        v.              ) | |
|                          ) | Judge Robert M. Dow, Jr. |
| JASON MARKER d/b/a MARKER AND  ) | |
| ASSOCIATES in his individual capacity, LTD  ) | |
| COMMODITIES LLC, in their individual  ) | |
| capacity, and AS OF YET OTHER  ) | |
| UNKNOWN EMPLOYEES in their individual  ) | |
| capacity,                        ) | |
|                          ) | |
|         Defendants.     ) | |
|                          ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Troy Henderson alleges that Defendants Jason Marker d/b/a Marker and Associates, LTD Commodities LLC, and unknown employees of LTD conspired to deceive him, interfere with and deprive him of his workers' compensation rights, and intentionally inflict emotional distress on him. He further alleges that Defendant LTD misclassified his employment status, discriminated against him on the basis of his race, and retaliated against him after he filed a lawsuit. Defendants LTD [41] and Marker [43] have filed motions to dismiss Plaintiff's second amended complaint. For the reasons stated below, the motions are granted and Plaintiff's federal claims (Counts I-II and IV-IX) are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts III and X-XVIII), which are dismissed without prejudice to being re-filed in state court.

## I. Background

For purposes of the instant motion to dismiss, the Court construes the second[1] amended complaint [28] in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all reasonable inferences in his favor. *E.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). In addition, because Plaintiff is proceeding *pro se*, the Court construes his second amended complaint liberally and holds it to a less stringent standard than if it had been drafted by a trained lawyer. See, *e.g.*, *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006). The Court considers "not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013), such as Plaintiff's previous federal case, *Henderson v. Rauen*, Case No. 11-cv-5787 (N.D. Ill.). "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips*, 714 F.3d at 1020; see also *Bogie v. Rosenberg*, 705 F.3d 603, 610-12 (7th Cir. 2013); *Polzin v. Gage*, 636 F.3d 834, 838 & n.1 (7th Cir. 2011). The Court also considers additional facts set forth in Plaintiff's briefs, [32][2] and [45], so long as those facts are consistent with the pleadings. *Phillips*, 714 F.3d at 1020. The facts set forth below are stated

---

[1] It appears that the "second amended complaint" is in fact the third; Plaintiff filed an original complaint [1], an amended complaint [7], obtained leave to file instanter a second amended complaint [11 & 12], and subsequently filed the instant "second amended complaint" without obtaining leave of court [28]. The Court nonetheless refers to the operative complaint as the "second amended complaint."

[2] Plaintiff filed a response [32] to Defendant LTD's original motion to dismiss his second amended complaint [22], which appears to have been provided to LTD before it was filed on the docket. (The second amended complaint is docket entry 28; LTD's motion to dismiss it is docket entry 22. See also [32] at 2-3.) LTD withdrew its original motion to dismiss the second amended complaint without prejudice, see [33], and later renewed its motion to dismiss [41]. Because Plaintiff is *pro se* and chose to stand on his second amended complaint, and because LTD's current motion to dismiss significantly overlaps the first, the Court considers Plaintiff's response [32] to the first motion to dismiss [22] in its evaluation of the second [41].

as favorably to Plaintiff as permitted by the second amended complaint, its attachments, see Fed. R. Civ. P. 10(c), and other materials that may be considered at this stage.

Plaintiff is an African American male. [28] ¶ 5. Defendant LTD Commodities ("LTD"), a catalog distributor, hired him to work as a full-time maintenance mechanic on or about May 7, 2007. *Id.* ¶¶ 6, 8. LTD classified Plaintiff as its employee and memorialized this classification on Plaintiff's W-2 tax form. *Id.* ¶ 9. Plaintiff alleges in his briefs that he was diagnosed with Post-Traumatic Stress Disorder ("PTSD") and severe depression during his tenure at LTD, and that Defendants knew about these diagnoses. See [32] at 18; [45] at 9-10.

Plaintiff was injured on the job on May 2, 2008. [28] ¶ 10. That same day, he began receiving workers' compensation benefits from LTD. *Id.* ¶ 11. At some point, Plaintiff asserted claims of racial discrimination, harassment, and retaliation against LTD. See [28] Ex. K. On August 17, 2009, Plaintiff and LTD entered into a confidential settlement agreement to resolve Plaintiff's discrimination claims. [28] ¶ 12; [28] Ex. K. Plaintiff has attached an August 20, 2009 version of the settlement agreement to his second amended complaint as Exhibit K. Pursuant to that settlement agreement, Plaintiff agreed to waive any and all future claims against LTD, "with the exception of any pending workers' compensation claims." See [28] Ex. K ¶ 13(a). A handwritten provision in the agreement reiterates, "Notwithstanding any provision in this Agreement to the contrary, HENDERSON is not releasing his pending workers' compensation claims." *Id.* LTD did not admit wrongdoing but agreed to make monetary payments totaling $83,000 to Plaintiff and deem his employment terminated effective August 17, 2009 pursuant to a "reduction in force." See *id.* Ex. K ¶¶ 1(a), 2. Both Plaintiff and his attorney signed the agreement. See *id.* Ex. K at 7. Plaintiff now alleges that the agreement "contains ambiguous and contradictory terms" that "affect[ ] the legality of Plaintiff's workers[']

3

compensation claim and the settlement." [32] at 4.

LTD's first payment to Plaintiff was for $40,000. See [28] Ex. K ¶ 1(a). Under the agreement, Plaintiff "underst[oo]d and agree[d] that an[] IRS Form 1099 will be issued to him reflecting the payment that is made." *Id.* Plaintiff further agreed that "in the event that the payment * * * is construed as an award of taxable income, backpay or wages," he would "promptly reimburse, indemnify, and hold LTD harmless for the full amount of all taxes, all social security contributions and any other taxes or penalties assessed by the Internal Revenue Service or any state or local taxing authority," and that he "shall have no claim against LTD for failing to issue a form W-2 or the applicable information return, or to withhold federal, state, or local taxes required [sic] payroll deductions." *Id.*

On or about January 31, 2010, Plaintiff received a Form 1099-Misc from LTD. See [28] ¶ 14; *id.* Ex. A. The form indicated that he had received $40,000 in "nonemployee compensation," *i.e.*, the settlement payment. [28] Ex. A. Plaintiff alleges that the LTD intentionally "misclassified Plaintiff as an independent contractor" on the Form 1099-Misc and that he "was misclassified in payment for the confidential settlement." *Id.* ¶¶ 14-15. Plaintiff further claims that he was misclassified "while he was receiving workers' compensation benefits." *Id.* ¶ 16. Plaintiff alleges in his brief that he repeatedly informed LTD about the misclassification but that LTD refused to correct it. See [32] at 4-5, 16. Instead, LTD told him to seek legal representation and address the issue in court. See *id.* at 5.

On August 22, 2011, Plaintiff filed a *pro se* complaint against LTD and others, including the lawyers who represented him in connection with his discrimination claims and in negotiating the confidential agreement to settle them. See *Henderson v. Rauen*, Case No. 11-cv-5787, Dkt. No. 1 (N.D. Ill. Aug. 22, 2011); see also [28] ¶ 19. Plaintiff filed an amended complaint on

September 2, 2011, see Case No. 11-cv-5787, Dkt. No. 9 (N.D. Ill. Sept. 2, 2011), which he characterizes as "statutorily protected activity." [28] ¶ 18. In the amended complaint, Plaintiff alleged that LTD misclassified him as an independent contractor on the Form 1099-Misc documenting his $40,000 settlement payment. See Case No. 11-cv-5787, Dkt. No. 9. He alleged that this misclassification was part of a broader conspiracy among the defendants to discriminate against and harass Plaintiff on the basis of his race. See *id.* Dkt. No. 9. Plaintiff attempted to state claims for breach of fiduciary duty, "intentional negligence," conspiracy to violate Title VII, conspiracy to violate 42 U.S.C. § 1981, conspiracy to fraudulently conceal, conspiracy to violate 42 U.S.C. § 1985, intentional infliction of emotional distress, violation of 42 U.S.C. § 1986, and a declaratory judgment nullifying the settlement agreement. See *id.* The judge assigned to that case *sua sponte* dismissed Plaintiff's federal claims for failure to state a claim, and declined to exercise supplemental jurisdiction over his state law claims. See *id.* Dkt. No. 14 (N.D. Ill. Sept. 28, 2011); see also [28] ¶ 20. Plaintiff did not appeal this decision. See generally Case No. 11-cv-5787 (N.D. Ill.). It is unclear whether Plaintiff pursued his state law claims in state court.

At some point,[3] Plaintiff hired Defendant attorney Jason Marker to represent him in connection with a workers' compensation action against LTD. [28] ¶ 17. Plaintiff alleges that on October 12, 2011, LTD retaliated against him for filing the amended complaint in his recently dismissed federal case by somehow "unlawfully influencing Marker into conspiracy." *Id.* ¶¶ 21-22. On October 13, 2011, Marker met with Plaintiff and presented to him an offer from LTD to settle his workers' compensation claims for $140,000. *Id.* ¶¶ 23-25. Plaintiff rejected the offer

---

[3] Plaintiff's second amended complaint repeatedly alleges that he retained Defendant Marker "[o]n or about December 17, 2011," [28] ¶¶ 17, 263, 273, 279, 285, 292, but his other allegations and the exhibits attached to the second amended complaint suggest that Marker was working on his behalf prior to that date.

because Marker had not added to it terms that Plaintiff had requested. *Id.* ¶¶ 26-27. Plaintiff alleges that Marker did not add the terms because "LTD's misclassification interfered." *Id.* ¶ 28. After Plaintiff declined the offer, Marker said something to the effect of, "Now that the police are involved Plaintiff has no civil or legal rights of any kind." *Id.* ¶¶ 31-32. Plaintiff does not know why Marker made this statement, *id.* ¶ 33, and he does not allege that he or Marker had any contact or interaction with law enforcement officials. Marker rebuffed Plaintiff's persistent requests to take the workers' compensation claims to trial. *Id.* ¶¶ 29-30.

A few days later, on October 17, 2011, Marker e-mailed a settlement release to Daniel Swanson, who represented LTD in connection with Plaintiff's workers' compensation claims and allegedly acted as LTD's agent. *Id.* ¶¶ 35-38. The e-mail said that the attached release was made "per our agreement," [28] Ex. B, which Plaintiff alleges means that Marker and LTD had "combined for the agreed purpose of accomplishing by concerted action a lawful purpose by unlawful means to deprive Plaintiff." [28] ¶ 34. The settlement release, attached to Plaintiff's second amended complaint as Exhibit C, proposed that LTD would pay Plaintiff $140,000.00 to settle the workers' compensation claims pending in Case No. #08 WC 29738. See [28] Ex. C. In exchange, Plaintiff would agree to "waive any and all present or future claims, including claims for work injuries, civil suit[]s, EEOC claims, or other lawsuits of any kind either in federal or civil court." *Id.* The proposed release expressly provided that "the payment of $140,000.00 is made in addition to the settlement already paid to HENDERSON in his EEOC claim ($83,000.00), and that the payments of both settlements are completely separate and represent separate consideration for those causes of action. LTD will in no way reduce HENDERSON'S $140,000.00 by the amount it already paid to him out of the EEOC settlement." *Id.*

Plaintiff alleges that the October 17, 2011 proposed settlement release "was drafted outside of the Illinois Workers' Compensation Act, as part of a scheme to defraud Plaintiff in contract," and served as a "ruse to 'display' the amount of $140,000.00 to Plaintiff for his workers' compensation claim." [28] ¶¶ 42-43. He further alleges that Marker and LTD's true intent in circulating the settlement release was to induce him into relying on later, materially different drafts of the release, which he terms the "off-set release(s)." See *id.* ¶¶ 44-45. The Court infers that Plaintiff did not sign the October 17, 2011 proposed settlement release.

On or about October 20, 2011, Marker and Swanson corresponded by voicemail and agreed to revise the October 17, 2011 settlement release into the "off-set release." *Id.* ¶ 52; see also [28] Ex. D ("Here is a revised version of the Settlement Agreement as our voice mails have discussed back and forth."). Plaintiff alleges that the "off-set release" "reduced the amount of compensation for Plaintiff's work injuries * * * from $140,000.00 to $1.00." [28] ¶ 54. The "off-set release" is attached to Plaintiff's amended complaint as Exhibit E. It provided:

> This settlement is made between TROY HENDERSON and LTD COMMODITIES LLC (LTD) in order to amicably resolve all pending litigation. In consideration of a settlement in the amount of $1.00 paid by LTD to HENDERSON and acknowledging the separate settlement between the parties on HENDERSON'S workers' compensation claim (case # 08 WC 29738), HENDERSON agrees to waive any and all present or future claims, including claims for work injuries, civil suit[]s, EEOC claims, or other lawsuits of any kind either in federal or civil court.
>
> Furthermore, LTD agrees that the above payment is made in addition to the settlement already paid to HENDERSON in his EEOC claim ($83,000.00), and that the payments of all three settlements (HENDERSON'S EEOC settlement, HENDERSON'S workers' compensation settlement and this settlement) are completely separate and represent separate consideration for those causes of action. LTD will in no way reduce HENDERSON'S any of the [sic] other settlements by the amounts paid or to be paid from any of the other two settlements, including amounts LTD has already paid to HENDERSON out of the EEOC settlement or by the amount HENDERSON has received in temporary total disability benefits from his workers' compensation claim to date.

[28] Ex. E.  By its plain terms, the "off-set release" contemplated three separate settlements: the 2009 settlement of $83,000, a workers' compensation settlement in an unspecified amount, and a settlement of $1.00 in exchange for any other claims Plaintiff was asserting or might assert. Plaintiff alleges, however, that in fact Marker and LTD intended for him to waive all of his claims, including his workers' compensation claims, for $1.00.  See [28] ¶¶ 60-61.  He contends that "[t]here would be no separation of settlements to represent separate causes of action, due to Marker and Swanson's statements made in paragraphs (A): To amicably resolve all pending litigation, and paragraph (E)[,] 'Henderson agrees to waive any all present claims or future claims including claims for work injuries, civil suits or other lawsuits of any kind either in federal court or civil court.'"  [28] Ex. E.

On October 24, 2011, Plaintiff e-mailed Marker, telling him, "I need to hear from you concerning the settlement of my workers comp claim and the settlement that you drafted entitling me to receive consideration of $1.00 for my injuries as soon as possible please."  [28] ¶ 66 & Ex. F.  Marker responded that same day, telling Plaintiff that he had a call in to opposing counsel to speak to him about "what it is we would like the contract to say now."  [28] ¶ 67 & Ex. F. Marker added, "Per our conversation, I will simply be asking him if we can add a sentence to the pink settlement contracts that indicate that none of the $140,000 will be reduced in any manner by previous amounts paid."  *Id.*  Ex. F.

On or about October 27, 2011, LTD faxed to Marker a signed copy of yet another proposed settlement release.  [28] ¶¶ 68-69.  Marker e-mailed the proposed settlement release to Plaintiff on October 27, 2011.  See [28] Ex. G.  This signed release is attached to the second amended complaint as Exhibit H.  [28] ¶ 85.  This release provided:

> This settlement is made between TROY HENDERSON and LTD COMMODITIES LLC (LTD) in order to amicably resolve all pending litigation.

In consideration of a settlement in the amount of $1.00 paid by LTD to HENDERSON and acknowledging the separate settlement between the parties on HENDERSON'S workers' compensation claim (case # 08 WC 29738), HENDERSON agrees to waive any and all present or future claims, including claims for work injuries, civil suits, EEOC claims, or other lawsuits of any kind either in federal or civil court. Specifically, HENDERSON releases LTD from any actual or potential claims arising out of his employment, or the termination of his employment, and any other claims that he has or may have at the time he signs this Settlement Agreement and Release. The claims that HENDERSON is waiving include, for example, discrimination claims under Title VII of the Civil Rights Act of 1964, including its amendments, The Americans With Disabilities Act, The Age Discrimination and Employment Act of 1967, as amended ("ADEA"), and any and all other claims under any federal, state or local employment or antidiscrimination law, any contract, or under common law, including any tort claims. * * * HENDERSON acknowledges and agrees that he is not eligible, and hereby waives any right for equitable or legal recovery of any kind. Finally, HENDERSON represents that HENDERSON has no pending claims or actions against LTD (other than pending Workers' Compensation Claim which is being settled separately) and HENDERSON agrees that he will not file a lawsuit or claim against any of the foregoing released parties where the claim would be covered under the terms of this Release Agreement.

Furthermore, LTD agrees that the above payment is made in addition to the settlement already paid to HENDERSON in August 2009 ($83,000.00) (the "EEOC settlement"), and that he payments of all three settlements (HENDERSON'S EEOC settlement, HENDERSON'S workers' compensation settlement and this settlement) are completely separate and represent separate consideration for those causes of action. LTD will in no way reduce any of HENDERSON'S workers' compensation or any other settlements by the amounts paid or to be paid from any of the other two settlements, including amounts LTD has already paid to HENDERSON out of the EEOC settlement or by the amount HENDERSON has received in temporary total disability benefits from his workers' compensation claim to date.

[28] Ex. H. Plaintiff alleges that this release "referred directly to Plaintiff's pending workers' compensation claim and work related injuries as being released and waived." [28] ¶ 81.

The proposed release gave Plaintiff 21 days in which to review the settlement and discuss the matter with an attorney. See [28] Ex. H. It also provided for a 7-day revocation period if Plaintiff elected to sign the release. See *id.*

Plaintiff met with Marker to discuss the signed release on October 28, 2011. [28] ¶ 72.

Plaintiff alleges that "Marker gave Plaintiff a directive of a demand from LTD to sign the release or no benefits." *Id.* ¶ 73. Plaintiff declined to sign the release, which he alleges "discriminated against" his "race, age, disability and rights to make and enforce a contractual relationship with LTD." *Id.* ¶¶ 74-75. He alleges that the release contained false statements that were intended to induce him to waive his workers' compensation claim in exchange for $1.00 and deprive him of proceedings to which he was statutorily entitled. *Id.* ¶¶ 82-84. After Marker told him that "LTD demands Plaintiff to sign or Plaintiff will receive no benefits," and assured Plaintiff that the release was necessary and protected his rights, however, Plaintiff signed the release. See *id.* ¶¶ 86-89.

A few days later, on or about October 30, 2011, Plaintiff revoked the release. *Id.* ¶ 90. Marker responded by leaving a message on Plaintiff's voicemail in which he accused Plaintiff of "monkeying around with his release instructions." *Id.* ¶¶ 91-92. On November 1, 2011, Marker e-mailed Plaintiff another version of the release. See *id.* ¶ 93. The e-mail is attached to the second amended complaint as Exhibit I, [28] ¶ 96, and the proposed release is attached as Exhibit J. [28] ¶ 104. In the e-mail, Marker stated:

> I want to reiterate that although we will be keeping the seven day revocation clause in the contract, that this is the last time that I will revise this contract. As you know, I have counseled you on your rights and obligations under both this settlement release and the workers' compensation settlement contracts. I wish to reiterate these documents fully protect your rights and ensure that you will be paid your settlement of $140,000.00. As I advised over the phone, once you've signed this Release, if you should then request any further modification or invoke the revocation clause under the Release agreement, I will have no choice but to withdraw as your attorney. I cannot continue to represent you if do not trust me and my recommendations, nor can I continue[] to spend time making unnecessary changes to the Release agreement."

[28] Ex. I. Plaintiff interpreted these statements as a threat that Marker would withdraw his services and continue to work with LTD to coerce and extort Plaintiff. See *id.* ¶¶ 95-96.

The November 1, 2011 version of the release is virtually identical to the October 27, 2011 version, compare [28] Ex. J with [28] Ex. H, although it was not signed by LTD. See [28] Ex. J. As with the previous versions of the release, Plaintiff alleges that "There would be no workers' compensation claim to settle separately or to represent separate causes of action for, as Marker stated in paragraphs, (S): To amicably resolve all pending litigation, (W): Henderson agrees to waive any and all present claims or future claims including claims for work injuries, civil suits [] or other lawsuits of any kind eithe[r] in federal or civil, and (Y): Any and all other claims under any federal, state any contract, or under common law." [28] Ex. J.

Plaintiff relied on Marker's assurances that the release was necessary and protected his rights. *Id.* ¶ 105. Plaintiff signed the release on November 2, 2011. *Id.* ¶ 106. Plaintiff later revoked the agreement on November 5, 2011. *Id.* ¶ 107. No subsequent versions of the release are referred to in or attached to the second amended complaint.

On or about December 6, 2011, Plaintiff attended a scheduled hearing in his workers' compensation case. *Id.* ¶ 108. Plaintiff spoke with the hearing arbitrator about the series of releases prepared by LTD and Marker. *Id.* ¶ 109. On December 13, 2011, Marker contacted Plaintiff to attend a workers' compensation hearing scheduled by Swanson. *Id.* ¶ 111. This previously unscheduled hearing took place on December 16, 2011. See *id.* ¶ 114. During the hearing, Swanson threatened Plaintiff and told him that the "police will continue against" him if he did not close the case. *Id.* It is unclear from Plaintiff's submissions what, if anything, happened next, or whether or how Plaintiff's workers' compensation claims have been resolved. Plaintiff alleges, however, that in March 2013, the IRS confirmed that LTD had misclassified him on the Form 1099-Misc. See *id.* ¶ 128; see also [13] Ex. L (letter from the IRS to Plaintiff stating that LTD "was correct in issuing you a Form 1099-MISC, unfortunately the income was

placed in the incorrect box. The income should have been reported in box 3 ["other income"] instead it was reported in box 7 ["nonemployee compensation"]").

Plaintiff asserts eighteen federal and state law causes of action against Defendants LTD and Marker. Count I seeks a declaratory judgment concerning the settlement agreement from 2009. Count II alleges that LTD committed fraud on the court by making false statements about the 2009 settlement in its motion for extension of time [9]. Count III alleges that LTD misclassified him as a non-employee in violation of the Illinois Employee Classification Act, 820 ILCS 185/1-999. Counts IV-VIII allege that LTD (or Marker, in Count VIII) discriminated against Plaintiff on the basis of his race (Counts IV, VI, VII) and retaliated against him for filing the 2011 lawsuit (Counts V, VI, VIII), in violation of 42 U.S.C. § 1981. Count IX alleges that LTD and Marker conspired to "deprive Plaintiff in his statutorily protected proceedings," in violation of 42 U.S.C. § 1985(3). Count X alleges that LTD and Marker conspired to interfere with his statutorily protected workers' compensation proceedings. Count XI alleges that LTD and Marker conspired to induce him to sign the off-set release and waive his workers' compensation claim in exchange for $1. Counts XII-XVI allege that Marker breached his fiduciary duties to Plaintiff by drafting coercive and deceptive releases on October 17, 2011 (Count XII), and October 20, 2011 (Count XIII), presenting Plaintiff with the deceptive LTD-signed release on October 27, 2011 (Count XIV), e-mailing Plaintiff another version of the release on November 1, 2011 and threatening to withdraw his representation (Count XV), and contacting Plaintiff on December 13, 2011 to inform him of the unscheduled workers' compensation hearing called by LTD and allowing Swanson to threaten Plaintiff at that hearing. (Count XVI). Count XVII alleges that Defendants conspired to intentionally inflict emotional distress on Plaintiff. Finally, Count XVIII alleges that LTD negligently supervised its employees

and agents by permitting them to "make demeaning offensive comments in written contract form pertaining to Plaintiff's race, age, disability and work injuries rights for compensation of $1.00," draft and sign releases that required Plaintiff to waive his rights, demand that Plaintiff sign the releases on discriminatory terms to receive benefits to which he already was entitled, continue to engage in discriminatory conduct after Plaintiff engaged in protected activity, and submit to the Court the allegedly fraudulent motion for extension of time.

Defendants LTD [41] and Marker [43] have moved to dismiss Plaintiff's second amended complaint. Defendant LTD seeks to dismiss all allegations against it, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). See [41]. Defendant Marker seeks to dismiss the second amended complaint pursuant to Rule 12(b)(6) on the grounds that it fails to comply with the pleading requirements set forth in Federal Rule of Civil Procedure 8. See [43]. He also contends that Plaintiff substantively fails to state claims of conspiracy, breach of fiduciary duty, and intentional infliction of emotional distress. See *id.*

## II.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "'fair notice of what the * * * claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*,

496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir.1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole."). Because Plaintiff is proceeding *pro se*, the Court construes his second amended complaint liberally and holds it to a less stringent standard than if it had been drafted by a trained lawyer. See, *e.g.*, *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006).

### III.   Analysis

#### A.   Rule 8

Federal Rule of Civil Procedure 8(a) requires a plaintiff to provide in his complaint "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Marker contends that "Plaintiff's thirty-page, seventeen-count, thirty-page (though page 29 was not filed with the court), does not contain a short or plain statement of the grounds upon which Plaintiff seeks relief" and should be dismissed "[f]or this reason alone." [44] at 4. The Court respectfully disagrees.

"The word 'short' in Rule 8(a)(2) a relative term." *Kadamovas v. Stevens*, 706 F.3d 843,

844 (7th Cir. 2013). Here, Plaintiff filed a thirty-page second amended complaint (the twenty-ninth page was included in the courtesy copy that he provided to the Court) in which he attempts to assert 18 claims against multiple Defendants. Complaints alleging many distinct charges against multiple defendants often require extensive allegations, particularly in light of the plausibility requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). See *Kadamovas*, 706 F.3d at 844-45. Additionally, it generally is inappropriate to dismiss a complaint merely because of its length or because it contains superfluous matter. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). Perhaps Plaintiff could have stated his allegations more succinctly, but Plaintiff is *pro se* and his second amended complaint is neither overwhelmingly lengthy nor riddled with a "morass of irrelevancies." *Kadamovas*, 706 F.3d at 844 (quoting *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). More importantly, neither the length, the organization, nor the contents of Plaintiff's second amended complaint rendered it so unintelligible that Defendants were unable to discern Plaintiff's allegations and prepare substantive responses to them. See *Stanard*, 658 F.3d at 798 ("[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy."). The primary purpose of Rule 8(a) and other rules governing pleadings is to ensure that defendants are given fair notice of the allegations against them. *Stanard*, 658 F.3d at 792. That purpose adequately was served here.

**B.      Federal Claims**

**1.      Claims Relating to 2009 Settlement (Counts I & IV)**

LTD contends that Plaintiff's request for a declaratory judgment relating to the 2009 settlement and related tax matters is barred by res judicata because it was adjudicated in a

previous federal lawsuit, *Henderson v. Rauen*, Case No. 11-cv-5787 (N.D. Ill.). The Court agrees. The Court also concludes that res judicata bars Plaintiff's § 1981 claim relating to the 2009 settlement (Count IV).

Res judicata, also known as claim preclusion, is a doctrine that protects the finality of previous judgments by preventing parties from relitigating previously resolved claims. *Palka v. City of Chi.*, 662 F.3d 428, 437 (7th Cir. 2011). Although it is an affirmative defense, see Fed. R. Civ. P. 8(c)(1), res judicata may bar a plaintiff's claims the motion to dismiss stage if the allegations of the complaint demonstrate the doctrine's applicability. See *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Likewise, "courts, in the interest of judicial economy, may raise the issue of preclusion *sua sponte* even when a party fails to do so." *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996); see also *Arizona v. California*, 530 U.S. 392, 412-13 (2000); *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). In federal court, res judicata has three elements: "(1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Adams v. City of Indianapolis*, --- F.3d ---, 2014 WL 406772, at *12 (7th Cir. Feb. 4, 2014). "Whether there is an identity of the cause of action depends on whether the claims comprise the same core of operative facts that give rise to a remedy." *Id.* (quotation omitted). It is irrelevant that Plaintiff's prior suit against LTD also included other defendants that are absent from the present suit. *Czarniecki v. City of Chi.*, 633 F.3d 545, 549 (7th Cir. 2011).

Here, the allegations of Plaintiff's second amended complaint demonstrate that res judicata should operate to bar both his claim for declaratory judgment (Count I) and his claim

that he was misclassified for tax purposes on the basis of his race (Count IV). LTD was named as a defendant in both the instant case and the previous case. The causes of action asserted against LTD in the 2011 suit – a request for a declaratory judgment concerning the 2009 settlement and the alleged misclassification, and allegations that LTD conspired to wrongfully misclassify him on the basis of his race – are largely the same as Counts I and IV here. Not only that, they rest on the exact same core of operative facts. The only discernible distinctions between the causes of action in the two cases are (1) Plaintiff in the first action alleged that LTD conspired with his previous attorneys to violate § 1981, while in this action he alleges that LTD acted alone, and (2) Plaintiff in the present action alleges for the first time (and LTD seems to concede) that the IRS ultimately determined that the $40,000 settlement payment should have been reported in Box 3 rather than Box 7 of the Form 1099-Misc. These minor differences are not enough to save Plaintiff's claims, however; the underlying dispute alleged in both actions is identical. See *Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006) ("Two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations." (quotations omitted)); *cf. Palka*, 662 F.3d at 437 ("Where it applies, res judicata prevents the relitigation of claims already litigated as well as those that could have been litigated but were not."). Finally, Plaintiff's 2011 suit was dismissed with prejudice, see Case No. 11-cv-5787, Dkt. Nos. 18 & 20 (N.D. Ill. Sept. 28, 2011), and Plaintiff did not appeal the dismissal. "A dismissal with prejudice, even a dismissal imposed as a sanction, is a final judgment on the merits." *Waivio v. Bd. of Trs. of Univ. of Ill. at Chi.*, 290 F. App'x 935, 938 (7th Cir. 2008); see also *Tartt*, 453 F.3d at 822. Plaintiff cannot now attempt to relitigate these claims in the present suit. LTD's motion to dismiss Counts I and IV is granted.

## 2. Fraud on the Court (Count II)

In Count II, Plaintiff alleges that LTD committed "fraud on the court" by knowingly making false statements of material fact in its May 15, 2013 motion for extension of time to answer Plaintiff's first amended complaint [9]. He claims that he was "injured, damaged and unduly prejudiced against in his proceedings due to the false statement made to the Court in LTD's motion," [28] ¶ 168, namely that "Plaintiff, who was represented by counsel, entered into a confidential settlement agreement with Defendant which included a general release of any and all claims against Defendant, except for his pending workers' compensation claim, and a covenant not to sue based on the released claims." [9] ¶ 2; see [28] ¶ 154. Plaintiff further alleges that "LTD knowingly omitted and did not inform the Court or Plaintiff in their motion the confidential settlement purported to release Plaintiff's work related physical injuries," [28] ¶ 155, and that LTD failed to inform the Court "that on or about March 20, 2013 LTD admitted to the IRS * * * [that] Plaintiff had been misclassified as a non employee specifically for Plaintiff's work related physical injuries pursuant to the confidential settlement." [28] ¶¶ 160-61. Plaintiff also takes issue with LTD's attachment to the motion a copy of Judge Leinenweber's opinion and order dismissing his previous suit. See *id*. ¶ 162. LTD has moved to dismiss Count II on the ground that Plaintiff has not alleged that it engaged in "'conduct that might be thought to corrupt the judicial process itself, as where a party bribes a judge or inserts bogus documents into the record.'" [42] at 11 (quoting *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997)). The Court construes this claim as federal, as it involves alleged fraud on this particular Court.

Plaintiff's allegations against LTD are serious ones. They do not, however, state a claim upon which relief may be granted. Parties may allege fraud on the court as a basis to vacate a

final judgment, see Fed. R. Civ. P. 60(b)(3), and the Court retains an inherent power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). But here there has been no final judgment to overturn, so Plaintiff's claim is not ripe. And although the Court in fact granted LTD's motion, see [12], it simultaneously granted Plaintiff's unnoticed motion for leave to file a second amended complaint, see *id.*, which essentially rendered moot the extension to respond to his first complaint. Moreover, LTD rightly points out that "fraud on the court" refers to conduct significantly more egregious than anything alleged here. The inclusion of a previous judgment with a motion, or the omission from a motion of information largely irrelevant to that motion, simply do not rise to the level of "fraud on the court." As the Seventh Circuit has explained, "Fraud in the legal process is not actionable if it is incapable of obstructing the opposing litigant. An erroneous legal contention, being out in the open as it were, does not have obstructive capability, and is not fraud merely because if believed it would confer an advantage on the party making it. If that were the standard for fraud on the court, no civil judgments would be final; every legal error that a judge committed that had been invited by the winning litigant would be, prima facie, fraud on the court." *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997) (citations omitted). To the extent that Count II is federal in nature, the motion to dismiss Count II is granted.

### 3.    § 1981 Claims Relating to Releases (Counts V-VIII)

LTD seeks to dismiss Plaintiff's remaining § 1981 claims on the grounds that he has not alleged sufficient facts to support them. See [42] at 7-10. Plaintiff generally responds that his factual allegations are adequate. See [32] at 9-14.

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual

relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). To state a claim of discrimination under § 1981, a plaintiff must allege that "(1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). "The Supreme Court has held that § 1981 authorizes claims for retaliation, if one person takes action against another for asserting the right to substantive contractual equality protected by § 1981." *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008)). To state a claim of retaliation under § 1981, a plaintiff must allege that he took some action to oppose discriminatory practices that the statute proscribes (*i.e.*, he asserted the right to substantive contractual equality) and that the defendant subjected him to an adverse action as a result. See *Smith*, 681 F.3d at 896; *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Settlement agreements are contracts. *Arrow Gear Co. v. Downers Grove Sanitary Dist.*, 629 F.3d 633, 637 (7th Cir. 2010).

At first blush, Plaintiff's allegations in Counts V-VII might appear to clear these relatively low thresholds. In Counts V and VI, Plaintiff essentially asserts that LTD was angry about the 2011 lawsuit concerning the alleged racially based misclassification (notwithstanding its prompt resolution in LTD's favor) and decided to get back at Plaintiff by negotiating in bad faith to settle his workers' compensation claims while avoiding its obligations to compensate him for injuries he sustained while in LTD's employ. See [28] ¶¶ 201-04, 214-16. In Count VII, Plaintiff alleges that LTD discriminated against him because of his race in the 2011 settlement negotiations by "demanding Plaintiff to sign their release on discriminatory terms for

compensation of $1.00 or no benefits." *Id.* ¶ 226. He further alleges that "LTD * * * intended to discriminate by stating Plaintiff acknowledges and agrees that he is not eligible and hereby waives any right for equitable or legal recovery of any kind." *Id.* ¶ 228. These allegations strain credulity, but the Court at this stage of the case must accept them as true; "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 556 (2007). Taken as true, the facts alleged by Plaintiff in the narrative portion of his second amended complaint setting out the bases for Counts V, VI, and VII appear to meet the relatively low notice pleading standard that continues to govern discrimination and retaliation claims after *Twombly* and *Iqbal*. See, *e.g.*, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010).

However, Plaintiff's allegations fail to clear the threshold when considered in light of the proposed settlement releases that he has attached to his second amended complaint as exhibits. "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips*, 714 F.3d at 1020; see also *Bogie v. Rosenberg*, 705 F.3d 603, 610-12 (7th Cir. 2013); *Polzin v. Gage*, 636 F.3d 834, 838 & n.1 (7th Cir. 2011). Here, the proposed settlement releases that Plaintiff alleges were intended "to deny Plaintiff's employee benefits in contract," [28] ¶ 204, and "demean[ ] and discriminat[e] against Plaintiff's race, age, disability and rights to make and enforce a contractual relationship," *id.* ¶ 225; see also *id.* ¶ 226, such that he would "receive $1.00 for his Illinois Workers' Compensation claim," *id.* ¶ 216, and "waive[ ] any right for equitable or legal recovery of any kind," *id.* ¶ 228, by their text do nothing of the sort. The proposed releases contain no language that could reasonably be read as "demeaning or discriminatory" to Plaintiff on any basis. See

[28] Exs. C, E, H, & J. They likewise expressly provide that the $1.00 sum was consideration for claims that Plaintiff might have had separate and apart from those asserted in his workers' compensation settlement. See [28] Exs. E, H & J. In light of the plain language of the proposed settlement releases, there is no basis for Plaintiff's allegations that LTD (and/or Marker) was trying to dupe him into signing away his workers' compensation rights for the paltry sum of $1.00, whether because of his race, his previous lawsuit, or for any other reason. In fact, both the releases and Marker's contemporaneous e-mail confirm that Plaintiff was to receive a $140,000 payment in his workers' compensation settlement. Accordingly, the Court grants LTD's motion to dismiss Counts V-VII.

Count VIII likewise fails to state a claim against LTD and must be dismissed. In this count, Plaintiff alleges that "LTD knew Plaintiff had engaged in protected activity by filing a lawsuit," [28] ¶ 237, and that "[a]s a result * * * Plaintiff suffered an adverse action on November 1, 2011," *id.* ¶ 238, when "Marker issued an off-set release for Plaintiff to receive $1.00 for his work injuries to deprive Plaintiff in contract for LTD." *Id.* ¶ 239. However, Plaintiff has not alleged – and it is not reasonable to infer – that Marker, Plaintiff's former attorney, in fact was an agent of LTD. Plaintiff has alleged that Marker *conspired with* LTD, but not that LTD could or did dictate Marker's actions. Accordingly, the Court dismisses Count VIII as to LTD. The Court also dismisses Count VIII to the extent that Plaintiff is attempting to assert it against Marker; he has not alleged conduct for which Marker would have a basis to retaliate against him.

### 4. § 1985 Conspiracy (Count IX)

In Count IX, Plaintiff alleges that Defendants LTD and Marker conspired to "deprive Plaintiff in his statutorily protected proceedings," in violation of 42 U.S.C. § 1985(3). LTD

argues that this count (and as well as Plaintiff's other two conspiracy counts) must be dismissed because "Plaintiff has not alleged any facts would establish a single plan known to LTD and Marker, and which was hatched in order to discriminate against Plaintiff on the basis of his race," has not alleged that Defendants entered into the alleged conspiracy because of his race, and has not alleged how he was injured by their actions. [42] at 11. Marker similarly argues that "Plaintiff makes no allegations that anything of Marker's actions were taken with racial animus of any sort," and that "Plaintiff also alleges nothing to suggest that Marker and LTD had a common plan to commit an unlawful act." [44] at 5.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Xiong v. Wagner*, 700 F.3d 282, 297 (7th Cir. 2012) (quoting *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1024 (7th Cir. 2000)). Plaintiff has alleged a conspiracy, but its alleged actors, LTD and Marker, are both private parties. A purely private conspiracy – as between Defendants alone – is not actionable under § 1985(3) unless it interferes with the Thirteenth Amendment right to be free from involuntary servitude. *Petrovic v. Enter. Leasing Co. of Chi., LLC*, 513 F. App'x 609, 611 (7th Cir. 2013) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993)); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1024 n.20 (7th Cir. 2000). Plaintiff's complaint does not contain any allegations suggesting that involuntary servitude or the Thirteenth Amendment is relevant here. Accordingly, Count IX must be dismissed. To the extent that Plaintiff's allegations of conspiracy in Counts X and XI are predicated on § 1985(3), they must be dismissed for the same reason.

### C.     State Law Claims

Plaintiff has not stated a federal claim, and the Court must now decide whether to retain jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit, animated by the principle of comity, consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993); see also *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction * * *").

In *Wright v. Associated Insurance Cos., Inc.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point to a federal decision of the state-law claims on the merits."  The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251.  That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13–217; *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice of the state law claims also is appropriate here because the case is only at the motion to dismiss stage and substantial judicial resources have not been committed to the ten state law counts in Plaintiff's second amended complaint. *Wright*, 29 F.3d at 1251.

Finding no justification for departing from that "usual practice" in this case, the Court dismisses without prejudice Plaintiff's state law claims without discussing their merit under state law. To the extent that Plaintiff's state law claims against LTD and Marker may have merit, they are best resolved in state court.

## IV.    Conclusion

For the reasons stated above, Defendants' motions to dismiss, [41] & [43], are granted. Plaintiff's federal claims (Counts I-II and IV-IX) are dismissed with prejudice.[4]   The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts III and X-XVIII) and dismisses those claims without prejudice to being re-filed in state court.[5]   Judgment will be entered in favor of Defendants and against Plaintiff.


Dated: March 5, 2014                                    _____
                                                       Robert M. Dow, Jr.
                                                       United States District Judge

---

[4] The Court in its discretion concludes that it is appropriate to dismiss Plaintiff's federal claims with prejudice. See *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012); see also *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). The operative complaint represents Plaintiff's third attempt to articulate his claims, and "in court, as in baseball, three strikes and you're out." *Bank of Am.*, 725 F.3d at 819. Moreover, in light of the contents of the proposed settlement releases and related documents attached to the second amended complaint as exhibits, the Court concludes that further amendment would be futile. See *Bogie*, 705 F.3d at 603.

[5] Illinois law gives Plaintiffs one year from a dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13–217.